IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PHILANDRIA HUGHES            )
                             )
        v.                   )        NO. 3:20-0228
                             )
INTERNATIONAL PAPER CO.      )

**TO:    Honorable Aleta A. Trauger, District Judge**

## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered March 16, 2020 (Docket Entry No. 6), this *pro se* case was referred to the

Magistrate Judge for pretrial proceedings under 28 U.S.C. § 636(b)(1) and Rule 72 (b) of the Federal

Rules of Civil Procedure.

Pending before the Court is Defendant's motion to dismiss (Docket Entry No. 12), to which

Plaintiff has responded in opposition. *See* Docket Entry No. 15. For the reasons set out below, the

undersigned respectfully recommends that the motion be granted and this action be dismissed.


## I.  BACKGROUND

Philandria Hughes ("Plaintiff"), an African-American female, filed this lawsuit on March 16,

2020, bringing claims of employment discrimination against International Paper Co. ("Defendant")

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and

42 U.S.C. § 1981. *See* Complaint (Docket Entry No. 1). Plaintiff demands a trial by jury and

requests damages and injunctive relief. *Id*. at 7-8.

Plaintiff works at Defendant's facility located in Murfreesboro, Tennessee. Although Plaintiff

began working for Defendant in 1993 as laborer, she currently holds the position of Shipping and

Warehouse Manager, which involves supervision of employees on three different shifts relating to

shipping and warehouse operations. *Id*. at ¶ 6. Plaintiff alleges that Mark Snape ("Snape"), the

Murfreesboro Plant Manager, has been her supervisor since 2014. *Id*. at ¶ 7.

Plaintiff alleges that she has been subjected to a racially hostile workplace since Snape, a white male, became her manager, and she sets out in her complaint the following events as support for her claim:

1) in 2014, Snape told Plaintiff that she "was in the wrong seat on the bus;" *see* Complaint at ¶ 8;

2) after complaining about this comment, Plaintiff was transferred in 2015 to Defendant's "Amazon Team" where she replaced Marcy Gunter ("Gunter"); *id*. at ¶ 9;[1]

3) Gunter, a white female who remained with Defendant in another management position, thereafter harassed Plaintiff with racial and hostile comments; *id*. at ¶ 11;

4) sometime in 2015, a white supervisor instructed Plaintiff to alter a performance evaluation for an African-American employee who was later terminated, which Plaintiff refused to do because a white employee who engaged in similar conduct was not being reprimanded; *id*. at ¶ 12;[2]

5) during a team meeting on July 30, 2018, when asking if any employees had questions, Snape asked Plaintiff, "back of the bus, do you have anything?" *id*. at ¶ 13;

6) at a management meeting in 2018, a white maintenance manager was speaking about machines and referred to parts as the "slave" and "master;" *id*. at ¶ 16.

Plaintiff alleges that she complained to Defendant's human resources department about Snape's 2014 comment shortly after it occurred, *id*. at ¶ 8, and reported the 2018 comment by Snape and Gunter's abuse to the human resources department on July 30, 2018, *id*. at ¶ 14, but no corrective action was taken. *Id*. at ¶¶ 28-30 and 37. Plaintiff contends that she was so distraught from Snape's 2018 comment that she was unable to physically and emotionally work the remainder of the day and that she sought professional treatment after leaving work. *Id*. at ¶¶ 14-15. She asserts that she was diagnosed with major depression, recurrent and severe, and with panic disorder with

---

[1] Although Plaintiff does not state in her complaint when this event happened, she indicated in her amended charge of discrimination that it occurred in 2015. *See* Docket Entry No. 12-2 at 2.

[2] Although Plaintiff does not state in her complaint when this event happened, she indicated in her amended charge of discrimination that it occurred in 2015. *See* Docket Entry No. 12-2 at 2-3.

2

paranoia, which has required her to meet with a therapist. *Id*. at ¶ 15. Plaintiff asserts that she remained out of work from July 30, 2018, to April 3, 2019, when she was finally able to return to work. *Id*. at 19.

Plaintiff asserts that she filed a charge of discrimination on August 2, 2018, and an amended charge of discrimination on April 16, 2019, and that she received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") on December 17, 2019.

## II. MOTION TO DISMISS

In lieu of an answer, Defendant filed the pending motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant argues that dismissal of the complaint is warranted because Plaintiff's claims are based, in part, upon three events that were not timely pursued in a charge of discrimination – the 2015 transfer, the 2015 performance evaluation incident, and Snape's 2014 comment- and, further, that the allegations of wrongful acts she sets out in her complaint do not support a claim of a racially hostile workplace. Defendant contends that the few off-hand comments that occurred over a period of several years and the two relatively minor events about which Plaintiff complains are insufficient to show the type of severe and pervasive workplace conduct that is necessary for a hostile work environment claim. In support of its motion, Defendant attaches as exhibits Plaintiff's August 2, 2018, charge of discrimination to the Tennessee Human Rights Commission, *see* Docket Entry No. 12-1, and her April 15, 2019, amended charge of discrimination to the EEOC. *See* Docket Entry No. 12-2.

Plaintiff responds in opposition to the motion to dismiss with a memorandum, *see* Response (Docket Entry No. 15), and with exhibits consisting of copies of her 2013 and 2014 work performance reviews and documents related to a workplace reprimand she received on May 13, 2020, after an incident occurred between her and another employee. *See* Docket Entry No. 15-1. Plaintiff contends that she has been a long time good worker for Defendant. She argues that she has set forth allegations that create reasonable cause to believe that discrimination has occurred and that Defendant has subjected her to a hostile working environment based upon her race. Plaintiff reiterates the

3

allegations of her complaint and also contends that she was denied opportunities for advancement, was retaliated against, was not compensated for extra duties she performed, and was not properly evaluated. *See* Response at 2-4.

In a reply to the response, Defendant argues Plaintiff's response fails to directly address the legal arguments supporting the motion to dismiss the Complaint and instead improperly raises new allegations that are not contained in the Complaint and relies on the same broad legal conclusions that render the Complaint fatally deficient. *See* Reply (Docket Entry No. 16).

### III. STANDARD OF REVIEW

A motion to dismiss filed under Rule 12(b)(6) is reviewed under the standard that the Court must accept as true all of the well-pleaded allegations contained in the complaint, construe the complaint in the light most favorable to Plaintiff, and draw all reasonable inferences in favor of Plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Because Plaintiff is a *pro se* litigant, the Court is also required to view her complaint with some measure of a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). Although the complaint need not contain detailed factual allegations, the factual allegations supplied must be enough to show a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-61 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the sufficiency of the complaint, the Court need not accept as true legal conclusions or unwarranted factual inferences. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000). The complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In reviewing the motion to dismiss, the Court may consider Plaintiff's charge of discrimination that was attached to the motion to dismiss even though it was not attached to her complaint because it is referred to in her complaint, is central to her claims, and is a public record. Such factors permit the Court to consider the exhibit in ruling upon the pending motion to dismiss without converting the motion to a motion for summary judgment. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th

4

Cir. 1997); *O'Bryan v. US Bank Nat'l Assocation*, 2020 WL 4753844 at *5 (M.D.Tenn. Aug. 17, 2020) (charge of discrimination could be considered by the court in reviewing a motion to dismiss even though it was not attached to the complaint); *Jenkins v. Trane U.S., Inc.*, 2013 WL 3272489 at *6, n.8 (M.D.Tenn. June 27, 2013) (same).[3]

## IV.  ANALYSIS

Title VII makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions or privileges of employment, because of such individual's . . . race ."  42 U.S.C. § 2000e-2(a)(1).  Encompassed within the protections afforded by Title VII is a protection against being subjected to a hostile workplace linked to race.  *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001).

Defendant's motion to dismiss essentially raises two arguments for dismissal – a timeliness argument and an insufficiency of the allegations argument.  After review of the parties' filings, the Court finds that these arguments have merit and that the motion to dismiss should be granted.  Even when Plaintiff's allegations are construed as true for the purposes of reviewing Defendant's motion, her allegations fail to support plausible claims for relief under Title VII.

Defendant first argues that some of the events set out by Plaintiff in her complaint were not raised in a timely manner in the administrative charge of discrimination that she filed with the Tennessee Human Rights Commission.  Specifically, Defendant contends that Plaintiff complains in her lawsuit about events occurring in 2014 and 2015 yet she did not file an administrative charge of discrimination referencing these events until August 2, 2018.

The Court agrees with this argument in part.  The timely filing of an administrative charge of discrimination is a prerequisite to bringing a lawsuit under Title VII.  *See* 42 U.S.C. § 2000e-5(e)-(f); *Puckett v. Tennessee Eastman Company*, 889 F.2d 1481, 1486-88 (6th Cir. 1989).  In the instant

---

[3] Because the purpose of a motion to dismiss brought under Rule 12(b)(6) is to test the sufficiency of the allegations that are made in the complaint and not to decide the merits of the case, the Court has not taken into consideration the evidentiary material submitted by Plaintiff as exhibits to her response to the motion to dismiss.

case, Plaintiff was required to file a charge of discrimination within 300 days of the alleged discriminatory acts. *See* 42 U.S.C. § 2000e-5(e); *Amani v. Oberlin College*, 259 F.3d 493, 498-99 (6th Cir. 2001).[4] A plaintiff's failure to timely exhaust administrative remedies is an appropriate basis for the dismissal of a Title VII claim, *Williams v. Northwest Airlines, Inc.*, 53 Fed.App'x 350, 351 (6th Cir. 2002), and claims that are not raised in a timely charge of discrimination are generally foreclosed from being pursued in a subsequent Title VII lawsuit. Thus, events occurring more than 300 days prior to Plaintiff's August 2, 2018, charge of discrimination, i.e. events occurring prior to October 6, 2017, are presumptively viewed as being barred as untimely.

In her complaint, Plaintiff appears to acknowledge the potential untimeliness issue related to these events, asserting:

> Defendant International Paper's actions were part of one unlawful employment practice extending back to 2014. These actions are not discrete, but are tied together with the constant theme of being racially hostile, including, but not limited to, using the exact same phrase in 2014 and 2018.

> The Plaintiff filed a charge of discrimination within the applicable time frame of the 2018 "back of the bus" comment, making the entirety of the allegations relating to the continuously fostered racially hostile work environment timely.

*See* Complaint at 5-6, ¶¶ 31 and 32.

The continuing violation doctrine allows a plaintiff to bring a claim for discriminatory conduct that occurs outside the limitations period if the discriminatory conduct is sufficiently related to conduct occurring within the limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-15 (2002); *Navarro-Teran v. Embraer Aircraft Maint. Servs., Inc.*, 184 F.Supp.3d 612, 624–25 (M.D.Tenn. 2016). However, the continuing violations doctrine does not permit recovery for discrete acts of discrimination that occurred outside the statutory period. *Nat'l R.R. Passenger Corp*, 536 U.S. at 113 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

---

[4] Because Tennessee is a "deferral state" for the purposes of federal discrimination statutes, Plaintiff is permitted 300 days within which to file a charge of discrimination. *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375-76 (6th Cir.2002).

In the instant case, Plaintiff's allegation that she was subjected to a retaliatory job transfer in 2015 concerns a discrete act that was required to be timely pursued in a charge of discrimination. *See Austion v. City of Clarksville*, 244 Fed.App'x 639, 647-48 (6th Cir 2007); *Sorey v. YRC, Inc.*, 2012 WL 38255, at *5 (M.D.Tenn. Jan. 6, 2012) (retaliatory acts occurring outside limitations period were discrete acts not saved by continuing violations doctrine). Because Plaintiff did not pursue this event in a timely charge, it cannot now be raised in a Title VII claim.

To the extent that Plaintiff points to three other events occurring in 2014 and 2015 as acts which she contends show a racially hostile workplace – Snape's 2014 comment, the 2015 performance evaluation incident, and Gunter's harassment that began in 2015 – these acts are not obviously discrete acts and thus they may be considered by the Court as part of the entire course of Plaintiff's hostile workplace claim. The continuing violation doctrine permits consideration of otherwise untimely acts if the acts are alleged to have contributed to the hostile work environment and at least one act contributing to the claim occurs within the filing period. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117.

Defendant's second argument for dismissal is that the events alleged by Plaintiff are not sufficient to support a plausible claim for a racially hostile workplace claim. Under the totality of the circumstances, the Court must agree with this argument. Plaintiff's claim relies on the following events: 1) the 2015 performance evaluation incident; 2) Gunter's alleged harassment of Plaintiff after Gunter was removed from her position and Plaintiff replaced her; 3) the 2018 comment from a maintenance manager about "master" and "slave" machinery parts; and, 4) Snape's 2014 and 2018 "back of the bus" comments.

An unlawful hostile work environment occurs when a plaintiff's workplace is so permeated with discriminatory intimidation, ridicule and insult that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The conduct at issue must be so severe or pervasive that a reasonable person would find the workplace hostile or abusive, and that the victim must subjectively

regard the workplace as abusive. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Conduct that is "merely offensive" is insufficient to support a hostile work environment claim. *Harris*, 510 U.S. at 21.

Courts must consider the totality of the circumstances to determine whether the cumulative effect of the conduct constitutes a change in employment conditions, that is whether a hostile workplace existed. *See Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011). Appropriate factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The "severe and pervasive" standard filters out complaints about "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [discriminatory] jokes, and occasional teasing." *Faragher*, 524 U.S. at 788. Thus, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quotation marks and citation omitted); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007); *Bowman*, 220 F3d. at 463; *Navarro-Teran*, 184 F.Supp.3d at 623; *Eachus v. Haslam*, 2016 WL 323675 at *7 (M.D.Tenn. Jan. 27, 2016). Additionally, the law draws a distinction between harassment and harassment that is based on a plaintiff's protected status. *Williams*, 643 F.3d at 511. Therefore, only incidents that occurred because of a plaintiff's race are properly considered in the context of a claim of hostile work environment. *Id*.

When the totality of the circumstances presented by Plaintiff's case are considered, Plaintiff's allegations, even when taken as true and viewed in the light most favorable to her, are insufficient to state a plausible claim that she was subjected to a racially hostile workplace that is actionable under Title VII. While the Court takes as true Plaintiff's assertion that she personally reacted to these events in a manner that caused her to seek therapy and to take leave from continuing to work, her

subjective reaction is only part of the equation. The hostile workplace test involves not only an inquiry into how an employee personally viewed the challenged conduct, but also involves an objective review of the challenged conduct.

One of the events at issue, the 2015 performance evaluation incident, is simply not an event that evidences racially hostile conduct. Completing performance evaluations of lower level employees is a task within the scope of the duties of a management employee such as Plaintiff. Regardless of Plaintiff's belief that it was unfair or wrong to be asked to negatively change the performance evaluation of an African-American employee, this event does not reflect an act of racial harassment, let alone harassment directed at Plaintiff.

With respect to Plaintiff's allegations about harassment by Gunter, the Court notes that Plaintiff alleges that Ms. Gunter harassed Plaintiff with "racial and hostile comments" but Plaintiff provides no examples in her complaint of any of the actual comments. As such, this allegation is conclusory and fails to support a hostile workplace claim. Plaintiff's charge of discrimination, even when reviewed as a possible source to flesh out this allegation, fails to support Plaintiff's claim. While Plaintiff makes voluminous allegations in her charge of wrongful, harassing, or hostile conduct by Gunter that evidences a conflict between the two women, *see* Docket Entry No. 12-1 at 4-9, none of the conduct by Gunter is tinged with racial animus that reflects or infers racially hostile conduct. *See Faragher*, 524 U.S. at 788 (finding that "it is important to distinguish between harassment and discriminatory harassment in order to ensure that Title VII does not become a general civility code"); *Vitt v. City of Cincinatti,* 2004 WL 1147256 (6th Cir. May 20, 2004) (although the plaintiff had "an interpersonal conflict" with her "difficult supervisor," and was "physically threatened" and "humiliated," she failed to show racial harassment); *Ferguson v. Paulson*, 2009 WL 2223315 (M.D.Tenn. July 23, 2009) (plaintiff failed to show that workplace criticism and reprimands were linked to her protected status).

Plaintiff's final allegations of harassing conduct are the three comments at issue - Snape's 2014 and 2018 "back of the bus" comments and the maintenance manager's 2018 "master/slave"

9

comment. The Court finds the latter comment to be so tenuously linked to an act of harassment that it fails to be supportive of Plaintiff's claim. First, Plaintiff's own allegation is that this comment was not directed at her but was made during the course of a management meeting. *See* Complaint at ¶16. Second, the use of these phrases was made by the maintenance manager in reference to machinery parts. *Id*. The Court takes judicial notice that these two terms are commonly used in mechanical technology to refer to machinery parts based on the function of the part and are also commonly used in electronic technology to describe components of software and hardware in which one process or device controls another. While the Court appreciates that this description connotes a specific meaning to Plaintiff, and that less connotative language, such as "primary/replica," would be perfectly descriptive, the Court cannot, without more, find the maintenance manager's comment was harassment.

Snape's "back of the bus" comments, however, warrant more scrutiny. Given the well-known history of the civil rights movement in this country, which included wide spread bus boycotts, and the specific notoriety of Rosa Parks, an African-American woman, who refused to give up her bus seat to a white passenger, Snape's comment can reasonably be construed as being tinged with a racial aspect, even though the comments were not overtly racial. The fact that these comments were directed specifically toward Plaintiff, an older African-American woman, further supports this conclusion.

Nevertheless, these were two comments that occurred over the course of four years. The lack of frequency of the comments fails to show objective pervasiveness. Additionally, the comments were not overtly racial, threatening, vulgar, or egregious such that they can reasonably be viewed as severe. While Snape's comments are certainly offensive, they fall into the realm of sporadic comments that do not support a hostile workplace claim. In the end, the two isolated comments are

simply legally insufficient to show that Plaintiff was subjected to a working environment that was racially hostile and abusive.[5]

Plaintiff's claim brought under 42 U.S.C. § 1981 likewise warrants dismissal because claims brought under Section 1981 are governed by the same standards as claims of race discrimination brought under Title VII. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999); *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 418 (6th Cir. 1999);

**R E C O M M E N D A T I O N**

For the reasons set out above, it is respectfully RECOMMENDED that Defendant's motion to dismiss (Docket Entry No. 12) be GRANTED and that this action be DISMISSED as to all claims.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

---

[5] The recommendation for dismissal is not based on a conclusion that Plaintiff's allegations fail to state a *prima facie* case as argued by Defendant. *See* Docket Entry No. 13 at 4. At the pleading stage, Plaintiff is not required to plead facts that satisfy the *prima facie* case requirement that is part of the *McDonnell Douglas* burden shifting analysis used in review of Title VII cases. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012); *Veasy v. Teach for Am., Inc.*, 868 F.Supp.2d 688, 696 (M.D. Tenn. 2012). However, Plaintiff is required to set forth factual allegations that are sufficient to state a plausible claim under her theory of recovery. *Veasy*, *supra*.